## Daniel Head v. George F. Harding, Exec., etc., et al.

1. FRAUDULENT CONVEYANCES—*Voluntary and Without Considera-tion.*—A voluntary conveyance, made for the purpose of secreting property and without consideration, is fraudulent and void as to creditors of the grantor.

2. SAME—*Rights of the Grantee to Hold Property as Security for Advances.*—When a voluntary conveyance of real estate is made without consideration, for the purpose of defeating the creditors of the grantors in the collection of their claims, and the grantee is chargeable with notice of such claims, he can not, as against such creditors, hold the property conveyed as security for advances subsequently made by him to the grantor.

3. FRAUD—*Deeds Without Consideration—Knowledge of the Grantee.*—When a voluntary conveyance for the purpose of hindering and delaying creditors of the grantor, is made without any consideration, it is immaterial whether the grantee knew of the object of the grantor, or his purposes in making the conveyance.

**Bill to Set Aside a Fraudulent Conveyance.**—Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed January 22, 1896.

H. S. MECARTNEY and GEO. W. SMITH, attorneys for appellant.

U. P. SMITH, attorney for appellees.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT. This is an appeal from a decree of the Superior Court of

Cook County, adjudging and decreeing that a certain deed from one Seth Doan and wife to the appellant, Daniel Head, dated May 23, 1873, purporting to convey Blocks 14, 15 and 16 in Avondale, Cook county, was and is absolutely null and void as against the appellee, George F. Harding, executor of the estate of Abner C. Harding, deceased, and passed no title to the appellant, and ordering a sale of said blocks to satisfy the claim of said Harding, amounting at that time to more than $65,000, upon a judgment held by him and recovered against Eli G. Runals.

It seems that on June 8, 1870, Richard Campbell and others recovered a judgment in said Superior Court, against Eli G. Runals for $22,792.28, and that on February 8, 1871, said judgment was assigned to Abner C. Harding.

At the April term, 1874, of said court, Abner C. Harding filed a creditor's bill upon said judgment, and he dying on June 19, 1874, the appellee, George F. Harding, was appointed and qualified as executor under his will. That suit was prosecuted to a decree on December 22, 1875, whereby a receiver of all the property and equitable interests of said Runals was appointed, and ordering Runals to make an assignment to the receiver, and enjoining Runals from selling or transferring any property, etc., to anybody but the receiver.

On November 11, 1887, *scire facias* proceedings to revive said judgment were begun and an order of revival thereof was obtained on May 11, 1889.

Thereupon, and on May 17, 1889, the bill in this case was filed, setting up the recovery of said judgment, and return of execution thereon, no part satisfied, the assignment to Abner C. Harding, his death, and the appointment of appellee as his executor, the revival of said judgment and subsequent issuance and return of execution unsatisfied, and that the said judgment remains wholly unpaid.

As at first filed, the bill was in form an ordinary creditor's bill, without specific allegations as to any particular property, and without making the appellant a party; but about a month afterward, and on June 26, 1889, the bill was

amended by making appellant a party defendant and charging specifically that the appellant at the time of filing the bill, and then, held the title to said three blocks of land, and that the same was in fact the property of said Eli G. Runals, and that the title thereto was kept in the name of appellant solely for the purpose of preventing the property from being subjected to the lien and satisfaction of said judgment.

The answer of appellant to the bill as amended, raised a great variety of questions growing out of transactions between himself individually, and in a representative capacity, and the said Eli G. Runals, and a large amount of evidence was heard upon such issues.

We shall, however, confine ourselves to a consideration of only such of the evidence as tends, in our opinion, to a determination of the single issue involved in this appeal, as to the correctness of the decree subjecting the said three blocks of land to the equitable lien of appellee's said judgment.

The three blocks of land in question and one other in the same subdivision, appear, by the terms of a contract between Eli G. Runals and one Alonzo J. Sawyer, to have been purchased by Runals from Sawyer, on February 10, 1873, for an expressed consideration of $40,000, which was paid in property, personal and real, including an eighty acre tract situated in Portage county, Wisconsin, stated in said contract as being owned by Seth Doan, at a valuation of $800, and in the assumption by Runals, of an incumbrance, by way of mortgage, for $5,000, made by Sawyer on the three blocks in question.

By a subsequent agreement in writing between Runals and Sawyer, the said four blocks were deeded by Sawyer, at the request of Runals, to said Seth Doan, by deed dated March 15, 1873.

Several agreements subsequent thereto were entered into between Runals and Doan showing the terms, as between themselves, under which Doan held the title to the four blocks which, however, were all finally satisfied by an

agreement between them, dated December 27, 1876, whereby it was agreed that Runals should take the three blocks in question, incumbered and charged with the said $5,000 mortgage made by Sawyer, as and for his interest in said four blocks, and that Doan should take the one remaining unincumbered block.

The legal title to the three blocks continued, however, to stand in the name of Doan, and remained in him until he deeded the same to the appellant on May 23, 1878, but it is clear, from the statement made, that from and after December 27, 1876, the equitable title thereto was in Runals until, at least, the property was conveyed to the appellant. It was shown that the mortgage to secure the $5,000 Sawyer notes was released of record by a release deed dated February 21, 1878, and recorded March 20, 1878, and the presumption is that it was paid by Runals.

By deed dated May 23, 1878, Doan conveyed the three blocks to the appellant. The exact date of the delivery of that deed does not appear.

Franklin H. Head testified that it was delivered within a month or two after its date, and put among the papers of the estate of Orson S. Head, from which place he took it and had it recorded December 3, 1879.

Daniel Head does not seem to remember much about the delivery of the deed. There had been previous transactions of Runals with the estate of Orson S. Head, of which the appellant and Franklin H. Head were executors, and there was about $400 owing from Runals to the estate on a bond for a deed of some Wisconsin land, at the time the deed was delivered. Appellant does not claim that the deed was intended as anything more than as a security from Runals.

His contention is that he is entitled to hold the title as security for not alone what Runals owed the estate of Orson S. Head at the time the deed was delivered, but for all advances made afterward by himself, amounting to a large sum.

There was proof tending to show that the appellant knew

at the time the deed in question was delivered to him, it was a necessary expedient on the part of Runals to keep most of his property covered up so it could not be reached by his creditors, and that Doan, who was a brother-in-law of Runals, was one of Runals' instruments in effecting that object; and the inference from all the evidence is strong that he was informed of the existence of this particular judgment belonging to appellee, and of the appointment of the receiver under the creditor's bill that had been filed upon it, and that he was willing, having such knowledge, to accept the deed from Doan to him for the accommodation and use of Runals, by way of aiding him to keep the title to the three blocks in question where it would be free from the claims of appellee and be available to Runals in further dealings.

What the real value of the three blocks was at the time Doan deeded them to appellant does not appear, but the consideration expressed in the deed was thirty thousand dollars, and it would seem from dealings between Runals and appellant in subsequent years that they possessed a very considerable value.

It appears from the schedules of accounts between the appellant, both as executor and otherwise, and Runals, which were produced in evidence by appellant, that at the time Doan deeded the three blocks to appellant, there was owing from Runals to the executors of Orson S. Head a trifle more than four hundred dollars, upon a bond dated October 17, 1875, for that sum, which was given by Runals for the purchase of some Wisconsin land from the executors of O. S. Head, to which land the executors were, by the terms of the bond, to hold the title until full payment was made.

It is said in appellees' brief that appellant testified (although without reference to where such testimony can be found) that this bond was foreclosed in 1884, and we find no denial of that statement.

But whether so or not, the testimony of appellant makes it clear that the conveyance from Doan to appellant was not intended as additional security to that bond, and equally clear that nothing else was owing from Runals on any account when the deed was delivered.

The testimony of Franklin H. Head, that there was prob-
ably $1,000 balance due on a $5,000 transaction when the
deed was delivered, is not supported by the schedules of
accounts that appellant produced in evidence. He must
have confused his dates, for the first mention of indebted-
ness in any of the schedules, except the $400 bond, is
$2,500 on January 10, 1879, and a like amount on January
13, 1879; and the deed, according to his own testimony, was
delivered not later than July 23, 1878.

The only reasonable conclusion which, in our opinion, can
be reached from a fair consideration of all the evidence, is
that the conveyance of three blocks by Doan to appellant
was a purely voluntary conveyance caused by Runals to be
made for the purpose of secreting his property. Being made
without any consideration, it is immaterial whether appel-
lant knew of Runals' object or not, although, as we have
said, it is fairly inferable from all the evidence, that he
must have known it.

It then remains only to be determined whether, as against
the appellee, the appellant may hold the property as security
for advances subsequently made to Runals. In the view we
take of the case, it is not necessary to inquire into the
amount of such advances or for what purposes they were
made. The question of whether appellant had notice of
appellee's equitable lien upon the three blocks, either at the
time he took the conveyance thereof from Doan, or after-
ward, but before he made any such advances, is of first
importance in connection with appellant's claim to have
priority over the appellee.

Some time in 1874 or 1875, Runals filed a bill in the Cir-
cuit Court of Cook County against Isaac Simmons to fore-
close a mortgage against certain real estate in Chicago, and
a decree of foreclosure therein was recovered in January,
1876.

By the terms of the decree about $4,600 of the amount
thereof was ordered to be paid to one Sandheimer, and the
balance, of less than $100, was to go to Runals. Thereupon
the receiver theretofore appointed in the original creditor's

suit of Abner C. Harding against Runals, upon the same judgment as that of appellee, here intervened in said foreclosure suit of Runals against Simmons, and made such a showing of his equitable rights as such receiver, and of the fraud that was being perpetrated against him, and of his right to the fruits of said decree, as resulted in obtaining, on March 13, 1876, an order therein, setting aside so much of said decree as directed the payment of any part of said moneys to Sandheimer, and reserving the question as to whom the money should be paid until some further order thereon. Very shortly after the obtaining of that order, and before any further action in said foreclosure suit, Runals and Sandheimer assigned said decree and the evidences upon which it was based to the appellant, by an assignment bearing date April 3, 1887, and appellant held the same until February 24, 1888, when he assigned the same to one Taylor, without having in the meantime taken any further proceedings in the suit or under the decree.

We think that from the time of the assignment of that decree to appellant, on April 3, 1878, he was chargeable with notice of the entire records and proceedings in the suit in which it was entered, and being so chargeable, was bound with notice of the equitable lien of the appellee under his said judgment, creditor's bill and receivership, all of which were therein shown.

Entertaining that view, we are not inclined to follow out the various other transactions between Runals and appellant, subsequent to the delivery of the deed of May 23, 1878, from Doan to appellant. The specific notice with which appellant is, in our opinion, chargeable, in connection with the assignment to him of the Sandheimer and Runals decree, taken in connection with the more general evidences of notice to which we have previously referred, leaves no hesitancy to our conclusion that all transactions between Runals and appellant concerning advances based in any degree upon the property in question, made subsequent to the delivery of the deed from Doan, were fraudulent in law as against appellee, and that the decree of the Superior Court ought to be affirmed.

We will not, therefore, discuss the numerous other questions argued. They are all, in our opinion, subordinate to the one question we have disposed of.

The decree of the Superior Court is therefore affirmed.